**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tony Brown, | No. CV-19-05009-PHX-ROS |
| Petitioner, | **ORDER** |
| v. | |
| David Shinn, | |
| Respondent. | |

Magistrate Judge Camille D. Bibles issued a Report and Recommendation ("R&R") recommending the Court find all of Petitioner's claims procedurally defaulted. Both Petitioner and Respondent filed objections. Because the R&R analyzed the incorrect petition for writ of habeas corpus, the Court is required to reject it. However, the claims set forth in the operative petition are, in fact, procedurally defaulted without excuse. Therefore, the R&R will be rejected but the petition for writ of habeas corpus will be denied.

## BACKGROUND

Petitioner was charged with multiple crimes based on his involvement in a fight at a convenience store. (Doc. 18 at 2). Petitioner was at the store with his acquaintance, John Thorpe. Petitioner "cut in line and asked the cashier for a bus pass." (Doc. 14-1 at 31). Another patron objected which led to a fistfight between Petitioner and that patron. During the fight, Petitioner "produced a handgun, held it up to [the other patron's] . . . neck, and pulled the trigger." (Doc. 14-1 at 32). The gun did not fire because it was jammed. The

patron then ran across the street and contacted a police officer. The patron looked back and saw Petitioner handing the gun to Thorpe. Shortly thereafter Thorpe and Petitioner were arrested. A gun was found in Thorpe's possession.

Petitioner was charged with aggravated assault and tampering with physical evidence. At trial, the victim testified Petitioner had pushed a handgun against his neck and pulled the trigger. Pursuant to a plea bargain, Thorpe testified similarly. Another witness testified that he saw Petitioner hand something to Thorpe. That witness also testified he saw a mark on the victim's neck consistent with a weapon being pressed into it. A police officer confirmed "marks on the victim's neck . . . resembled the muzzle of a gun." (Doc. 14-1 at 132). Based on this evidence, Petitioner was convicted of aggravated assault and tampering with physical evidence.

Petitioner appealed his convictions but made only two arguments. His first argument was that the prosecutor had engaged in misconduct by "repeatedly impugn[ing] defense counsel" during closing arguments. In particular, Petitioner complained the prosecutor had compared defense counsel to "an illusionist attempting to distract or fool the jury." (Doc. 14-1 at 39). Petitioner argued those statements deprived him "of his due process right to a fair trial." (Doc. 14-1 at 38). Petitioner's second argument was that the trial court had miscalculated the amount of presentence incarceration credit. The Arizona Court of Appeals rejected Petitioner's prosecutorial misconduct argument but agreed the amount of presentence incarceration credit was incorrect. Therefore, Petitioner's convictions were affirmed but his sentence modified to include the correct amount of credit.

Petitioner filed a petition for review with the Arizona Supreme Court. (Doc. 14-1 at 79). That petition raised the single issue of prosecutorial misconduct based on the comments during closing arguments. While that petition was pending, Petitioner filed a "supplement" arguing "the prosecutor and police in this case suborned perjury." (Doc. 14-1 at 85). The supplement argued the "victim in this case lied about everything, and the prosecutor and police either knew or should have known that [the victim] was

prevaricating." (Doc. 14-1 at 86). The supplement referenced and included an "affidavit" from John Thorpe. That affidavit stated, in relevant part, that Thorpe's trial testimony "was perjured testimony, concocted during a 'free talk' with" a prosecutor and police officer. (Doc. 14-1 at 89-90). Thorpe further stated Petitioner "never pulled a gun during the fight . . . because he didn't have a gun." According to Thorpe, the gun was in "the waistband of [his] pants, and the gun fell out onto the payment as [he] tried to intervene and stop the fight." (Doc. 14-1 at 90). The Arizona Supreme Court summarily denied review. (Doc. 14-1 at 93).

Shortly after the Arizona Supreme Court denied review, Petitioner filed a "Notice of Post-Conviction Relief" in the state trial court. Counsel was appointed and that counsel filed a formal petition arguing Thorpe's affidavit was "newly discovered evidence" that merited an evidentiary hearing. (Doc. 14-1 at 105). That petition referenced "the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution," but it did not make any arguments based on those amendments. (Doc. 14-1 at 104). Instead, the petition was solely focused on obtaining an evidentiary hearing regarding the Thorpe affidavit. After the state responded, Petitioner's reply again focused on obtaining an evidentiary hearing. The reply cited "the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Const." but, like the initial petition, it did not make any substantive arguments under those amendments.

The trial court denied the post-conviction relief petition. In doing so the trial court concluded "an evidentiary hearing is not warranted because Mr. Thorpe's recantation is not credible." Sufficient other evidence supported the verdict and "[e]ven if Thorpe had testified consistent with his affidavit, it is highly improbable that it would have changed the verdict." (Doc. 14-1 at 146). Petitioner sought review by the Arizona Court of Appeals, again focusing exclusively on the argument that the Thorpe affidavit entitled him to an evidentiary hearing. (Doc. 14-2 at 8). The Arizona Court of Appeals granted review but denied relief, concluding the trial court did not abuse its discretion. (Doc. 14-2 at 31). Petitioner then filed his federal petition. (Doc. 1).

The original federal petition was dismissed because Petitioner had not alleged he was "in custody in violation of the Constitution or the law or treaties of the United States." (Doc. 4 at 2). Petitioner was informed he could amend his petition but, if he chose to do so, he had to "specifically allege in each ground the particular <u>federal</u> constitutional right allegedly violated." (Doc. 4 at 2). Petitioner filed an amended petition which the Court interpreted as raising the following four grounds for relief:

1. Petitioner's Fifth and Fourteenth Amendment due process rights were violated when an eyewitness later recanted his testimony;
2. Petitioner's Fifth Amendment rights were violated by prosecutorial conduct when the prosecutor allowed Thorpe to testify;
3. Petitioner's Fifth Amendment rights were violated when Arizona courts "discount[ed] the validity of Petitioner's newly discovered evidence without conducting an evidentiary hearing"; and
4. Petitioner was denied due process, in violation of the Fifth Amendment, based on the state post-conviction court not allowing him to make a record.

(Doc. 8 at 2). Respondent answered the amended petition and argued all four of these claims were procedurally defaulted. (Doc. 14).

The R&R erroneously examined the claims set forth in the original petition instead of the amended petition. (Doc. 18). Therefore, the R&R's analysis cannot be adopted. The Court will determine, in the first instance, whether the claims set forth in the amended petition are procedurally defaulted.

**ANALYSIS**

A state prisoner must "exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Poyson v. Ryan*, 879 F.3d 875, 894 (9th Cir. 2018). To do so, a state prisoner must "present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief." *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009). If a prisoner fails to do so, and some procedural barrier prevents him from going to

state court to do so, his federal claims are "procedurally defaulted." A federal court cannot reach the merits of procedurally defaulted claims unless an exception applies. *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007). Here, there is no dispute the claims in Petitioner's amended federal petition were not raised in state court. That is, neither on direct appeal nor during his state post-conviction relief proceedings did Petitioner develop an argument that his *federal* rights were violated based on the facts and theories set forth in his amended federal petition.[1] Petitioner cannot now return to state court to assert such claims, meaning they are procedurally defaulted. Accordingly, the Court can reach the merits of Petitioner's claims only if an exception to procedural default applies.

The first possible exception requires Petitioner show "a constitutional violation probably has caused the conviction of one innocent of the crime." *Id.* To take advantage of this exception, Petitioner must show "in light of all available evidence, it is more likely than not that no reasonable juror would convict him of the relevant crime." *Smith v. Baldwin*, 510 F.3d 1127, 1140 (9th Cir. 2007). Here, the Thorpe affidavit is not sufficient to establish no juror would have convicted Petitioner. Given the testimony from the victim, another witness, and the police officer, Petitioner still could have been convicted even if Thorpe had testified consistent with his affidavit. Accordingly, Thorpe's affidavit is insufficient to establish Petitioner can use the "actual innocence" exception to avoid procedural default.

The second exception requires the prisoner establish "cause and prejudice for his failure to exhaust his state court remedies." *Id.* This exception requires Petitioner "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Id.* at 1146. "[T]o establish cause for a procedural default, a petitioner must demonstrate that the default is due to an external objective factor that cannot fairly be

---

[1] In his post-conviction relief proceedings, Petitioner made vague references to multiple federal constitutional amendments but such references were not sufficient to exhaust any federal claims. "[I]t it is not enough to make a general appeal to a constitutional guarantee as broad as due process to" satisfy the exhaustion requirement. *Gray v. Netherland*, 518 U.S. 152, 163 (1996). *See also Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000) (noting "a federal claim has not been exhausted in state court unless the petitioner both raised the claim in state court and explicitly indicated then that the claim was a *federal* one").

attributed to him." *Id.*

Petitioner argues the failure to present his claims in state court should be attributed to his counsel, not him. (Doc. 20 at 3). Petitioner believes it would be "ridiculous and patently unfair" to allow his counsel's failures to result in a procedural bar. (Doc. 20 at 3). But Petitioner's attorney's actions or inactions cannot be used to avoid procedural default.[2] *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). Therefore, Petitioner has not established "cause" for his procedural default.

Accordingly,

**IT IS ORDERED** the Report and Recommendation (Doc. 18) is **REJECTED**.

**IT IS FURTHER ORDERED** the Amended Petition for Writ of Habeas Corpus (Doc. 7) is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** a Certificate of Appealability is **DENIED** because dismissal of the petition is justified by a procedural bar and jurists of reason would not find the procedural ruling debatable.

Dated this 2nd day of September, 2021.

Honorable Roslyn O. Silver
Senior United States District Judge

---

[2] There is a very limited exception to this rule: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). Petitioner has never attempted to assert an ineffective assistance of counsel based on his trial counsel's performance.